I. Osgood Carleton et al., Appellants, *v.* Lombard, Ayres & Co., Respondent.

(Submitted May 25, 1896; decided June 2, 1896.)

Motion for re-argument. (See 149 N. Y. 137.)

*B. F. Tracy* for motion.

*James C. Carter* and *R. Burnham Moffat* opposed.

O'Brien, J. This motion for a re-argument reveals the fact that the learned counsel for the defendant has wholly misapprehended our decision in this case and the grounds upon which it proceeded. This is apparent from the fact that the fundamental proposition which pervades the whole argument is that the contract between the parties contained an express warranty as to the quality of the goods; whereas we held, as is quite clearly indicated in the opinion, that there was no express warranty whatever. We were of the opinion, and are still of the opinion, that the words in the contract indicating the name, color and specific gravity of the oil were descriptive merely for the purpose of identity, as was held with respect to somewhat similar words in the case of *Coplay Iron Works Co.* v. *Pope* (108 N. Y. 232). Hence the rule that where a contract for the sale of goods contains a warranty as to certain quality, there can be no implied warranty that they shall possess other qualities, had no application to the case. We did not question the correctness of that general proposition, only its application to the peculiar facts and circumstances of this case. If a party orders a carriage from a manufacturer by a certain name, of a certain color and style, with certain dimensions, and the manufacturer delivers an article corresponding to the description, it does not necessarily follow that he has performed his contract. If it should turn out that the carriage by reason of secret defects in the material or in the process of manufacture, which could have been avoided by the exercise of ordinary care, and which were not discernible upon inspection, was not only a worthless but a dangerous thing, can it be said that under such circumstances the buyer

got the article which he contracted for? We think not. He was not only entitled to receive a carriage corresponding to the descriptive words of the contract, but also one that was not rendered worthless by reason of latent defects. It was this principle that we attempted to apply to this case.

The learned counsel concedes and has made prominent in his brief the following proposition : " In cases where goods are sold by a manufacturer without any opportunity for inspection and without any express warranty, there is an implied warranty of merchantability." We have held nothing in this case that is not fairly covered by that proposition. We held that there was an implied warranty against latent defects and that there was no express warranty, and we held that the inspection did not and was not intended to cover such defects.

Again he states : " It is well settled that no implied warranty of quality of merchantability arises where there has been an express warranty of some other quality. The giving by the vendor of one warranty is supposed to indicate an intention on the part of the buyer to desire no other. *Expressio unius est exclusio alterius.*" We have not and do not question the soundness of this rule, but as we have held in this case that there was no express warranty there was room for an implied warranty as to the latent defects.

The following proposition is also stated by counsel in his brief : " Where a known, described and defined article is ordered of a manufacturer, although it is stated to be required by the buyer for a particular use, still if the known, described and defined thing be actually supplied, as it is conceded it was in this case, the seller has performed every obligation arising out of the transaction." It is not conceded in this case that the seller had delivered the thing which he contracted to sell. It was conceded that he had delivered an article of oil of the name, color, test and specific gravity mentioned in the contract, but it was claimed that by reason of secret defects it was unmerchantable and hence not the thing sold. What we said on that point was this : " If it be true that the defendant in this case delivered alongside the vessel an article which was unmerchantable and unfit for transportation, in con-

sequence of hidden or latent defects arising from the process of manufacture, and of which it had or should have had knowledge, in the exercise of reasonable care, it has not, in any just or substantial sense, performed its contract, although the article so delivered was of the brand, color, test and specific gravity called for by the writing;" and that the plaintiffs were entitled to prove, if they could, that the refined petroleum delivered by the defendant alongside the ship, corresponding with the descriptive words of the contract, had in it some hidden or latent defect not discernible by the inspection provided for which rendered it then and there unmerchantable. We did not hold, and there is nothing in the opinion to indicate that we intended to hold, that the merchantable character of the goods was to be determined by their condition when they arrived in Calcutta.

The learned counsel complains that the numerous cases which he cited upon his supplemental brief have not been noticed in the opinion, and he infers from this circumstance that they were not understood or considered. There is no ground whatever for this conclusion, as we have often before pointed out in disposing of applications of this character. If the court were to attempt to point out the endless distinctions and varying shades of difference to be found in the numerous cases on the subject of warranty in contracts for the sale of goods, opinions in such cases could not be confined within any reasonable limits. But there are two or three of these cases which may be noticed now, in order to show how little bearing they have upon the controversy in question. The one prominently put forth by the counsel in his argument upon this motion is *De Witt* v. *Berry* (134 U. S. 306). In that case the court held that there was an express warranty. In this case we held there was not. Of course, if there was an express warranty in that case, as the court held there was, then there was no room for an implied warranty. Hence it had no application to the case at bar. There the seller agreed to deliver " eighty barrels of japan and twenty barrels of varnish within one year from date, *these goods to be exactly the same quality as we make for the De Witt Wire Cloth Company of New York, and as per sample bbls. delivered.*"

These words in the contract distinctly covered the whole question of the quality which the goods should possess for use or for sale. The buyer stipulated that they should be of the same quality as certain other goods, and also as the sample delivered. The oil in question was not sold under such a contract, but under descriptive words not intended to express the inherent qualities which it should possess as an article of commerce.

Similar prominence is given by counsel to the case of *Beck* v. *Sheldon* (48 N. Y. 365). In that case the goods were sold under a contract in which they were described by certain numbers, and it was shown that these numbers represented a particular kind and quality of goods in the market, and that the buyer got exactly what he contracted for, inasmuch as he made no claim that there was any secret or latent defect which changed or affected their character. It is obvious that that case had no application to a sale by descriptive words, when there is a secret defect in the article described.

Neither in the case of *Lord* v. *Edwards* (148 Mass. 476) nor in *Dounce* v. *Dow* (64 N. Y. 411) was there any question as to the liability of a manufacturer, for secret defects in his goods sold under such a contract as this. In the former case the goods, when delivered at a distant port, corresponded with the contract not only in name but in fact, but when they arrived at their place of destination they had deteriorated by perils of the sea. The only question was, whether the buyer or the seller assumed the risks of the voyage. That question is not in this case. In the latter case the buyer got just the brand of iron that he bargained for, but it turned out that it was defective, and not fit for the use intended. But the controlling fact in the case was, that the seller was not a manufacturer, but a dealer, chargeable with no more knowledge of the quality of the article than the buyer.

We held that knowledge on the part of the defendant as to the destination of the cargo of oil was a fact which it was competent for the plaintiff to prove, not, as the counsel supposes, for the purpose of raising an implied warranty, but as bearing on the question of ordinary care. Since the defendant was bound, under the decision, to furnish an article free

from such latent defects as could have been avoided by the exercise of ordinary care, that question was not foreign to the case. Ordinary care must be determined with reference to the facts and circumstances of the case, and it may well be that one degree of care might be exacted in case the oil was intended for domestic use, and another degree when intended to encounter the perils of transportation by a long sea voyage.

The opinion does not hold that there was any implied warranty that the goods should be fit for the use intended by the buyer. The defendant's liability, if any, was distinctly placed upon the existence of secret or latent defects in the article of oil. Whether such defects existed in fact when it was delivered at the vessel does not appear, for the reason that the rulings at the trial precluded the plaintiff from going into that question of fact.

We have clearly perceived from the beginning the great importance of this case and have aimed to place the decision upon grounds that seemed to us reasonable and just. Nor do we think it is contrary to any well-considered authority cited by the defendant's counsel when properly applied and understood. To demonstrate that, however, by a further reference to all of them would be imposing a burden upon the court quite unreasonable, and moreover it would be useless since it is not at all likely that the discussion would satisfy the defeated party that the result was right.

The defendant sold and received pay for a cargo of oil. It appears that the plaintiffs, who were the buyers, sustained a very large loss in consequence of the transaction by reason, as they allege, of secret defects in the article, due to improper refinement, and which could have been avoided or guarded against by the defendant in the exercise of reasonable care. In holding that the defendant is bound to meet that issue of fact we are unable to perceive, as the defendant's counsel seems to, that any injustice has been done or any strain put upon reason or the rules of law governing the construction of contracts of this character.

The motion should be denied, with costs.

All concur.